Argued and submitted May 2, 1990, the judgment of the Oregon Tax Court affirmed May 9, reconsideration denied June 20, 1991

Edwin S. and Agnes D. NUTBROWN,
Donald R. and Theresa Paape,
Howard R. and Margaret E. Cleary,
Norman L. and Gloria Minks' Successor-in-Interest,
James M. and Margaret Jackson,
Elenor Jean and Felix Erro,
James F. Simpson and Terri D. Dill-Simpson,
and Louis Z. and Lorna K. Perkins,
on behalf of themselves and all present and
former residents of Oregon who were paid retirement
benefits by the United States Government and were or are
subject to Oregon state income taxation
thereon in any year during the period 1979 forward
and all others similarly situated,
*Appellants,*

*v.*

Richard A. MUNN;
Robyn Godwin; John J. Lobdell;
all the unknown agents, employees,
successors in office, assistants and
all others acting in concert or cooperation
with the current and former Directors of the
Department of Revenue of the State of Oregon,
or at the direction of the current and former
Directors of the Department of Revenue of
the State of Oregon; and the Department of Revenue,
*Respondents.*

(TC 2867; SC S36652)

811 P2d 131

Eugene O. Duffy, Milwaukee, Wisconsin, argued the cause for appellants. With him on the briefs were Gary I. Grenley and Michael C. Zusman of Grenley, Rotenberg, Laskowkie, Evans & Bragg, P.C., Portland, O'Neil, Cannon & Hollman, S.C., Milwaukee, Wisconsin, and John B. Gould, Portland.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause on behalf of the respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Peterson, Chief Justice, and Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

GILLETTE, J.

## GILLETTE, J.

In this original proceeding brought in the Oregon Tax Court, plaintiff taxpayers ("Taxpayers") sought declaratory and injunctive relief and damages against present and former state officers and the Department of Revenue ("Defendants") pursuant to the federal Civil Rights Act, 42 USC § 1983.[1] Taxpayers also alleged claims for refund, claims in quasi-contract, claims in constructive trust, and claims for an order setting aside certain tax payments already made. The complaint was dismissed on Defendants' motion pursuant to Tax Court Rule (TCR) 21, based on Taxpayers' failure to exhaust their administrative remedies. Taxpayers appeal, seeking reinstatement of their federal civil rights claim. We affirm the judgment of dismissal.

### THE PARTIES

Taxpayers are eight married couples who have filed joint Oregon tax returns. One member of each of the couples receives retirement benefits paid by one or another agency of the United States. The State of Oregon imposes an income tax on those benefits, although it does not tax analogous benefits paid to persons who have retired, under the Public Employees Retirement System, from service in Oregon government. Taxpayers purport to bring this action not only for themselves, but for all others similarly situated. Defendants are the current Director of the Oregon Department of Revenue, his two immediate predecessors in that position, other persons allegedly acting in "concert or cooperation" with the current and former directors, and the Oregon Department of Revenue.

### PROCEDURAL HISTORY

This case is a successor to a substantially similar action brought in the Multnomah County Circuit Court on May 18, 1989, by many of the same taxpayers who are parties plaintiff here, against these same Defendants. Defendants in that case moved for dismissal pursuant to ORCP 21 on various grounds,

---

[1] 42 USC § 1983 provides, in part:

"Every person who, under color of any [state law] * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

including lack of subject matter jurisdiction, statutes of limitations, and sovereign immunity. Defendants specifically urged dismissal on the additional ground that the subject matter of the action arose under the tax laws of the State of Oregon and, therefore, exclusive jurisdiction over the action was vested in the Oregon Tax Court. The circuit court dismissed the case. So far as we are aware, no appeal was taken from that dismissal. Taxpayers then initiated the present proceeding in the Oregon Tax Court.

After Taxpayers had filed their first amended complaint in the Oregon Tax Court, Defendants moved to dismiss the complaint pursuant to TCR 21 on the ground, *inter alia,* that the Taxpayers lacked standing because they had not exhausted their administrative remedies in the Department of Revenue before invoking the Tax Court's jurisdiction.[2] The Tax Court granted Defendants' motion to dismiss on the ground that Taxpayers had failed to exhaust their administrative remedies. The present appeal followed.

## OREGON SYSTEM FOR TAXING GOVERNMENT RETIREMENT BENEFITS

Taxpayers allege, and Defendants acknowledge, that Oregon taxes income from government retirement benefits for former Oregon state workers differently than it taxes income from government retirement benefits of former federal workers. The taxation of income from federal retirement programs is governed by ORS 316.680(1)(c), which provides for deduction of certain of that income from the figure for "federal taxable income" on a taxpayer's Oregon income tax return:

"(1) There shall be subtracted from federal taxable income:

"* * * * *

"(c) Amounts received by a retiree, or the surviving spouse of a retiree in the taxable year in compensation for or on account of personal services rendered in prior years, from a pension, annuity, retirement or similar fund under a public retirement system established by the United States, including the retirement system for the performance of service in the Armed Forces of the United States, or by this state or any

---

[2] Defendants asserted additional grounds for dismissal that are not pertinent to this appeal.

municipal corporation or political subdivision of this state. The maximum amount excludable from taxable income under this paragraph from such pensions or annuities shall be in the amount of $5,000. If the taxpayer receives $30,000 or more of household income, as defined in ORS 310.630, the subtraction shall be reduced one dollar for each one dollar, or fraction thereof, that the household income of the taxpayer exceeds $30,000."

Thus, the largest amount of federal retirement income a retired federal worker may deduct is $5,000, and the worker may not deduct any of the worker's retirement income if the total of the retired worker's "household income" exceeds $35,000. The retired federal worker must pay Oregon income tax on any amount not deducted.

Oregon public employee retirees are treated differently. The Oregon Public Employees' Retirement System was established by the Public Employees' Retirement Act of 1953, Or Laws 1953, ch 200, and is now codified as ORS 237.001 to 237.315. A part of that Act, ORS 237.201(1), provides:

"The right of a person to a pension, an annuity or a retirement allowance, to the return of contribution, the pension, annuity or retirement allowance itself, any optional benefit or death benefit, or any other right accrued or accruing to any person under the provisions of ORS 237.001 to 237.315, and the money in the various funds created by ORS 237.271 and 237.281, shall be exempt from garnishment and all state, county and municipal taxes heretofore or hereafter imposed, except as provided under ORS chapter 118, shall not be subject to execution, garnishment, attachment or any other process or to the operation of any bankruptcy or insolvency law heretofore or hereafter existing or enacted except for execution or other process upon a support obligation or an order or notice entered pursuant to [certain other statutes not pertinent to the present case], and shall be unassignable."[3]

---

[3] In 1989, the Legislative Assembly enacted Oregon Laws 1989, chapter 906, section 2, which would have added the following subsection (2) to ORS 237.201:

"Subsection (1) of this section does not apply to state personal income taxation of amounts paid under ORS 237.001 to 237.315."

The new provision would have applied to retirement benefits paid during the 1989 calendar year, and thereafter. Or Laws 1989, ch 906, § 10. Arguably, its enactment would have mooted Taxpayers' complaint, at least to the extent that Taxpayers seek prospective relief, by providing equal treatment for federal and state retirement income. However, opponents of the amendment were able to obtain sufficient signatures to have the amendment referred to the people as Ballot Measure 3 at the November 1990 general election. The measure was defeated, with the result that the 1989 legislative

Taxpayers assert that this disparate treatment, for Oregon personal income tax purposes, of retirement income of state and federal workers is unconstitutional.

## THE LAW OF
## INTERGOVERNMENTAL TAXATION

It has been unconstitutional, at least since *McCulloch v. Maryland,* 4 Wheat 316, 4 L Ed 579 (1819), for a state to tax an instrumentality of the federal government. This rule, which came to be known as the doctrine of intergovernmental tax immunity, was expanded over time to the point that it was presumed impermissible either for a state to tax the salary of a federal officer or for the federal government to tax the salary of a state official. *See, e.g., The Collector v. Day,* 78 US 113, 124-28, 20 L Ed 122 (1871) (invalidating federal taxation of state judge's salary); *Dobbins v. Erie County,* 41 US 435, 10 L Ed 1022 (1842) (invalidating state tax on federal officer). These cases later were substantially limited. *See Helvering v. Gerhardt,* 304 US 405, 58 S Ct 969, 82 L Ed 1427 (1938) (nondiscriminatory taxation of state employees' income permissible); *Graves v. N. Y. ex rel. O'Keefe,* 306 US 466, 486-87, 59 S Ct 595, 83 L Ed 927 (1939) (nondiscriminatory state taxation of federal employees permissible). However, the requirement that any such intergovernmental tax be nondiscriminatory survives. Moreover, and at roughly the same time as the *Gerhardt* and *O'Keefe* cases were being decided, Congress enacted 4 USC § 111, which provides:

> "The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States * * * by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation."

Thereafter, the State of Michigan created an income taxing system that substantially resembled the Oregon income tax system involved in this case. Certain Michigan residents who were federal retirees receiving federal pensions challenged the Michigan system as offending both the intergovernmental tax immunity doctrine and 4 USC § 111. The case eventually reached the Supreme Court of the United States. *Davis v.*

---

amendment failed to become law. Thus, the disparate treatment about which Taxpayers complain continues.

*Michigan Dept. of Treasury,* 489 US 803, 109 S Ct 1500, 103 L Ed 2d 891 (1989). The Court held that 4 USC § 111 embodied the same concept as the intergovernmental tax immunity doctrine, and that both prohibited the State of Michigan from taxing the retirement benefits of former federal employees while exempting from taxation retirement benefits paid by the state and its political subdivisions. *Id.* at 817. Armed with *Davis,* Taxpayers here assert that Defendants refuse to follow *Davis* with respect to the Oregon income taxing system and that such refusal violates their rights under the United States Constitution and laws and is, therefore, actionable under 42 USC § 1983. The Oregon Tax Court, they contend, should have reached the merits of their case and so declared.

## OREGON TAX COURT
## JURISDICTION

The Oregon Tax Court was created in 1961. *See generally Sanok v. Grimes,* 294 Or 684, 690-97, 662 P2d 693 (1983); *Jarvill v. City of Eugene,* 289 Or 157, 163-66, 613 P2d 1, *cert den* 449 US 1013 (1980) (describing creation and jurisdiction of Oregon Tax Court). Two statutes, ORS 305.405 and 305.410, establish the basic jurisdiction of the Oregon Tax Court. ORS 305.405 provides:

"As part of the judicial branch of state government, there is created a court of justice to be known as the Oregon Tax Court. The tax court, in cases within its jurisdiction pursuant to ORS 305.410:

"(1)   Is a court of record and of general jurisdiction, not limited, special or inferior jurisdiction.

"(2)   Has the same powers as a circuit court.

"(3)   Has and may exercise all ordinary and extraordinary legal, equitable and provisional remedies available in the circuit courts, as well as such additional remedies as may be assigned to it."

ORS 305.410 provides:

"(1)   Subject only to the provisions of ORS 305.445 relating to judicial review by the Supreme Court and to subsection (2) of this section, the tax court shall be the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and fact arising under the tax laws of this state. * * *

"* * * * *

"(3) Except as permitted under section 2, amended Article VII, Oregon Constitution, this section and ORS 305.445, no person shall contest, in any action, suit or proceeding in the circuit court or any other court, any matter within the jurisdiction of the tax court."

As a general rule, cases reach the Oregon Tax Court on appeal from decisions of the Department of Revenue. This is because the statutory route for appeals of the actions of tax assessment and collection officers, both state and local, is through the Department. ORS 305.275(1), (2) and (3).[4] Taxpayers' allegations in this case concern the manner in which the Department and its officers and agents have proceeded and allegedly intend to proceed under the personal income tax laws. ORS 305.275(4) provides:

"Except as provided in ORS 118.350 and 305.410, [neither of which exceptions are pertinent to the present case,] no person shall appeal to the Oregon Tax Court or other court on any matter arising under the revenue and tax laws administered by the [D]epartment [of Revenue] unless the person first exhausts the administrative remedies provided before the [D]epartment and the director [of the Department of Revenue]."

In other words, a taxpayer wishing to appeal to the Oregon Tax Court first must exhaust the taxpayer's administrative remedies with the Department, at least where the Department

---

[4] ORS 305.275(1), (2), and (3) provide:

"(1) Any person aggrieved by an act or omission of:

"(a) The Department of Revenue in its administration of the revenue and tax laws of this state; or

"(b) A county board of equalization other than an order of the board; or

"(c) A county assessor, including but not limited to the denial of a claim for exemption, the denial of special assessment under ORS 308.370 or other special assessment statute, or the denial of a claim for cancellation of assessment; or

"(d) A tax collector,

which affects the property of the person and for which there is no other statutory right of appeal, may appeal to the Director of the Department of Revenue in the manner provided by this section.

"(2) A taxpayer or county assessor who is aggrieved by an order of a county board of equalization, may appeal from the order in the manner provided in this section.

"(3) Any person having a statutory right of appeal to the department or the director under the revenue and tax laws of the state shall appeal in the manner provided by this section."

has authority to deal with the contentions of the taxpayer under the tax laws.

In summary, the Oregon Tax Court has exclusive jurisdiction over "all questions of law and fact arising under the tax laws" of Oregon. ORS 305.410. At least with respect to the jurisdiction conferred on it by law, the Tax Court has all of the powers generally associated with circuit courts. ORS 305.405. The Director of the Department is responsible for hearing appeals challenging administrative decisions of the Department taken under the tax laws. ORS 305.275(1)(a). A party wishing to take an appeal to the Tax Court must, if the matter involves a subject within the appellate jurisdiction of the Director of the Department, first prosecute an appeal to the Director before filing an appeal to the Tax Court. ORS 305.275(4).

The Oregon Tax Court dismissed the complaint in this case due to the failure of Taxpayers to comply with ORS 305.275(4). Taxpayers assert that the Tax Court erred in doing so for three different reasons.[5] We turn now to consideration of Taxpayers' arguments.

## TAXPAYERS' CONTENTIONS

### 1. Tax Court Authority to Proceed Without Exhaustion

Taxpayers argue, first, that requiring them to exhaust their administrative remedies pursuant to ORS 305.275(4) is inappropriate in cases brought under 42 USC § 1983 because states may not erect procedural barriers to vindication of rights under that federal statute. We agree with this general proposition of law, but disagree that it has any applicability to the present case.

State courts have concurrent subject matter jurisdiction with federal courts over § 1983 actions. *Maine v. Thiboutot,* 448 US 1, 100 S Ct 2502, 65 L Ed 2d 555 (1980). In fact, Oregon courts are available to hear claims under § 1983. *See Rogers v. Saylor,* 306 Or 267, 280, 760 P2d 232 (1988)

---

[5] Although, as already noted, Taxpayers asserted several claims in their first amended complaint before the Oregon Tax Court, all of their arguments to us concern the dismissal of their claim under 42 USC § 1983. This may be due to the fact that all of Taxpayers' other claims involve state law theories and clearly are subject to the exhaustion requirements of ORS 305.275(4).

(suggesting, but not holding, that Oregon courts may be required to hear such claims). A state generally may not erect procedural barriers such as requiring that state remedies be sought and denied, before the federal remedy is invoked. *Rogers v. Saylor, supra,* 306 Or at 278 (citing *Felder v. Casey,* 487 US 131, 139, 108 S Ct 2302, 101 L Ed 2d 123 (1988)). From the foregoing, Taxpayers reason that they cannot be required to comply with ORS 305.275(4) before bringing their § 1983 action. Defendants respond that Taxpayers may be so required, because tax cases represent a special category of cases in which it is permissible for a state to require exhaustion of administrative remedies. There is no binding case law on point.

Defendants rely on *Fair Assessment in Real Estate Ass'n v. McNary,* 454 US 100, 102 S Ct 177, 70 L Ed 2d 271 (1981). *McNary* was a § 1983 action brought by property owners and others against certain Missouri tax assessment officials in federal district court. A majority of the Supreme Court of the United States held that "principle[s] of comity" prevented a federal court from entertaining such an action challenging the validity of state tax systems. *Id.* at 116. Four justices concurred on the ground that no issue of comity arose, because the fair import of the Tax Injunction Act, 28 USC § 1341,[6] indicated a congressional intent to limit the availability of § 1983 actions to those in which administrative remedies had been exhausted. *Id.* at 137 (Brennan, J., concurring).

In arguing to the contrary, Taxpayers rely on two cases decided since *McNary.* Neither case involved state taxation systems. In *Felder v. Casey,* 487 US 131, 108 S Ct 2302, 101 L Ed 2d 123 (1988), plaintiff sought damages in state court for alleged violations of his constitutional rights arising out of an arrest. The issue in the case was whether a Wisconsin statute that required potential plaintiffs to give notice of the circumstances giving rise to their claims, and then to refrain from bringing any action for 120 days thereafter, could bar a § 1983 action that was filed in violation of those

---

[6] 28 USC § 1341 provides:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

limitations. The Supreme Court of the United States ruled that such a procedural bar could not be imposed.

The Court first held that, as a general rule, a state could not require exhaustion of state law remedies as a prerequisite to filing a § 1983 action in state court. *Id.* at 146-48. If there were to be exceptions to this "no exhaustion" rule in particular classes of cases brought under § 1983, the Court held, the exceptions would have to come from choices made by Congress. *Id.* at 148-49. The Court did not purport to strike down *all* procedures required by state law, but it did indicate that any procedures that had the likely or intended effect of cutting down on the availability of the § 1983 remedy would not be acceptable. The Court by way of summary stated:

> "In enacting § 1983, Congress entitled those deprived of their civil rights to recover full compensation from the governmental officials responsible for those deprivations. *A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability,* and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, *is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law.* Principles of federalism, as well as the Supremacy Clause, dictate that such a state law must give way to vindication of the federal right when that right is asserted in state court."

*Id.* at 153. (Emphasis supplied.)

We do not read *Felder* to state any new or surprising principle. Where a state procedural rule has the effect of "minimizing government liability," as Minnesota's notice-of-claim statutes did in *Felder,* and as the damage limitations provisions of the Oregon Tort Claims Act did in *Rogers v. Saylor,* state law is inconsistent with the federal remedy, and cannot stand. *Rogers v. Saylor, supra,* 306 Or at 280-85. But, as noted, *Felder* does *not* purport to strike down *all* statutory procedural rules that would apply to § 1983 actions in state court. It speaks only to those state rules that would have the effect of limiting the remedy in a way that it would not be limited if the action were brought in federal court. Moreover, because § 1983 is a statute, it is clear that the Court was prepared to enforce any exhaustion requirement that the Congress considered appropriate.

Taxpayers also rely on *Patsy v. Florida Board of Regents,* 457 US 496, 102 S Ct 2557, 73 L Ed 2d 172 (1982), a § 1983 case brought in federal district court alleging race and sex discrimination. The defendant university system argued that the plaintiff had an adequate administrative remedy that she should have pursued. The Supreme Court of the United States rejected this argument: "Th[is] general rule [is] that federal courts cannot require exhaustion under § 1983." *Id.* at 512. The Court noted, however, that whether exhaustion of remedies was required in a given context was, first and foremost, a question of the intent of Congress:

> "[L]egislative purpose * * * is of paramount importance in the exhaustion context because Congress is vested with the power to prescribe the basic procedural scheme under which claims may be heard in federal courts. Of course, courts play an important role in determining the limits of an exhaustion requirement and may impose such a requirement even where Congress has not expressly so provided. However, the initial question whether exhaustion is required should be answered by reference to congressional intent; and a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with that intent."

*Id.* at 501-02. As was true of our review of *Felder,* we see no suggestion in this case that the Court meant to depart from its earlier holding in *McNary,* or limit the viability of state laws that do not affect or limit the substance of the federal right. We see no basis for saying that exhaustion of administrative remedies will be *required,* as a matter of law, in federal courts, but may not even be *permitted,* as a matter of sovereign choice, in state courts.

■ We believe that the *McNary* decision states the correct rule. Although there were different rationale to support the result, *McNary* demonstrates that the general rule found in *Felder* and *Patsy* — that § 1983 actions may be brought in the state court without exhausting state administrative remedies — does not apply to cases in which the allegedly actionable behavior of the defendants implicates the state's method of assessing and collecting taxes. Under both the majority rationale in *McNary* and under the Tax Injunction Act, if Taxpayers had brought their § 1983 claim in the United States District Court for the District of Oregon, the claim would have been dismissed for failure to exhaust state administrative remedies.

The McNary majority would so hold as a matter of comity. The four concurring justices in *McNary* and (as we read the decisions) the *Patsy* and *Felder* courts would so hold because requiring exhaustion is consistent with the congressional intent shown in the Tax Injunction Act. This does not mean that a *state* must, as a matter of federal law, impose a similar exhaustion requirement before it permits *its* courts to entertain such actions; neither Congress nor the federal courts has purported to control state trial procedure in such a way. What it does mean, we believe, is that a state *may* impose such a requirement *without offending* federal law.

We understand *McNary* to hold that, given the prime importance of noninterference with state taxing practices, Congress' purposes in enacting 42 USC § 1983 will not be defeated by requiring that complaining taxpayers first exhaust their state administrative remedies. If Congress' purposes will not be defeated by such a requirement in federal court, we cannot conceive how those purposes would be any more thwarted by imposition of precisely the same kind of procedural requirement when the § 1983 action is brought in state court. We therefore hold that ORS 305.275(4), which imposes such an exhaustion requirement, is constitutionally valid. The Oregon Tax Court did not err in relying on it in dismissing Taxpayers' claim.

Taxpayers argue, alternatively, that *McNary* was premised on the assumption that the plaintiffs in that case could bring their claims immediately in state court, without going through their state's administrative procedures. They quote and rely on the last sentence of the majority opinion in *McNary*, where the Court stated: "[T]he Missouri Supreme Court has expressly held that plaintiffs such as petitioners may assert a § 1983 claim in state court." *Fair Assessment in Real Estate v. McNary, supra,* 454 US at 116.

The quoted sentence does not mean what Taxpayers claim it means. That becomes clear when one reads the entire paragraph of which the quoted sentence was merely the last part:

"The adequacy of available Missouri remedies is not at issue in this case. The District Court expressly found 'that [petitioners] have means to rectify what they consider an unjust situation through the state's own processes,' and petitioners do not contest this finding. *In addition,* the Missouri Supreme

> Court has expressly held that plaintiffs such as petitioners may assert a § 1983 claim in state court."

*Id.* (Emphasis supplied.) (Citation omitted.) The words, "[i]n addition," make it clear that the Court contemplated the Missouri procedure as an integrated whole, with administrative procedures followed by a § 1983 action, if necessary. Taxpayers' argument to the contrary is wrong.[7]

Taxpayers further argue that, if this court holds that exhaustion of administrative remedies will be required before Taxpayers can bring their § 1983 action, then we will somehow be "us[ing *McNary*] as a guide to or invitation for state courts to decline jurisdiction." We do not deny that there is state court jurisdiction; we hold simply that the legislature has interposed a constitutionally permissible administrative process that must be followed before a plaintiff has standing to invoke the jurisdiction of the Oregon trial court.

Although we have heretofore limited our discussion of the exhaustion requirement of ORS 305.275(4) to the Oregon Tax Court, the same requirement applies to an action in any other court initiated by Taxpayers that challenges the validity of the Oregon retirement income tax laws. ORS 305.275(4) provides that "no person shall appeal to the Oregon Tax Court or other court on any matter arising under the revenue and tax laws * * * unless the person first exhausts the administrative remedies provided before the [D]epartment and the director."

Administrative remedies available to the Taxpayers include a request for declaratory and injunctive relief, as well as for refunds. We do not read ORS 305.275(4) so narrowly as to limit the scope of the exhaustion requirement to those cases where the revenue system has generated a ruling that can be appealed. If the law provides an adequate administrative

---

[7] Taxpayers also rely on a single sentence from *Pennhurst State School & Hosp. v. Halderman,* 465 US 89, 122, 104 S Ct 900, 79 L Ed 2d 67 (1984). The sentence is: "Challenges to the validity of state tax systems under 42 U.S.C. § 1983 also must be brought in state court. *Fair Assessment in Real Estate Assn., Inc. v. McNary,* 454 US 100 (1981)." The sentence was part of a paragraph illustrating the idea that federal claims sometimes are adjudicated in state courts. It cannot be bootstrapped into a holding that such cases must be brought in state court without exhaustion of administrative remedies.

remedy, then ORS 305.275(4) requires that it be exhausted before a court challenge may be prosecuted.[8]

█          Taxpayers further argue that, even if they are required to pursue their administrative remedies with respect to the damages portion of their § 1983 action, this court

> "must nevertheless reverse that portion of the order [of the Oregon Tax Court] dismissing [Taxpayers'] claims of declaratory and injunctive relief under § 1983. The Supreme Court has consistently held that plaintiffs may bring actions for declaratory and injunctive relief directly into court where plaintiffs seek relief from state officials acting outside the bounds of their constitutional or jurisdictional authority." (Citation omitted.)

Taxpayers are mistaken. We note, first, that there can be no doubt that, under the statutes regulating the Department and the Oregon Tax Court, Taxpayers are required to exhaust their administrative remedies with respect to declaratory relief.[9] ORS 305.105 provides:

> "The Department of Revenue in its discretion may, on petition by any interested person, issue a declaratory ruling with respect to the applicability to any person, property or state of facts of any rule or statute enforceable by it. The department shall prescribe by rule the form, content and procedure for submission, consideration and disposition of such petitions. Full opportunity for hearing shall be afforded to interested parties. A declaratory ruling shall bind the department and all parties to the proceedings on the state of facts alleged, unless it is altered or set aside by a court. A ruling shall be subject to review in the Oregon Tax Court and Supreme Court in the manner provided by ORS 305.445[,

---

[8] In agreeing that there is, after exhaustion of administrative remedies, jurisdiction in the Oregon court system to entertain Taxpayers' § 1983 action, we are not expressing any opinion as to just *where* in that system the appropriate forum is. This case does not require us to determine whether the appropriate forum is, as the parties appear to believe, the Oregon Tax Court, or is, instead, the circuit court. *See Sanok v. Grimes,* 294 Or 684, 662 P2d 693 (1983) (holding that a taxpayer's claims for damages from an assessor and an appraiser, even where coupled with other claims arising under the tax laws, were outside the jurisdiction of the Tax Court).

[9] What we say about declaratory relief applies equally to injunctive relief, inasmuch as Taxpayers' theory for injunctive relief in this regard is that they would be entitled to an injunction in furtherance of the declaratory relief that they believe a court would give them.

which governs appeals to the Tax Court and to the Supreme Court in taxation cases generally]."

The statutory reference to "statute enforceable" was added by the 1989 Legislative Assembly. Or Laws 1989, ch 414, § 2. The language appears to be a direct legislative response to *Portland Adventist Medical Center v. Sheffield,* 303 Or 197, 735 P2d 371 (1987), a case in which the Tax Court entertained an original proceeding for declaratory relief. The direct proceeding was necessary because, at the time, the Department had statutory authority to provide declaratory relief with respect to the meaning of rules, but not with respect to the meaning of tax statutes.

There now being a state statutory exhaustion requirement for declaratory rulings such as that sought by Taxpayers here, it would be anomalous indeed to hold that, while Congress intended that federal courts not intervene in such a process, Congress nonetheless intended that state courts *must* interfere in it. Both the majority and concurring opinions in *McNary* relied on a long line of federal cases making it clear that, as a matter of comity, federal courts will not enjoin state officers in the assessment and collection of taxes, nor will they grant declaratory relief that would have the same effect. *See, e.g., Great Lakes Co. v. Huffman,* 319 US 293, 63 S Ct 1070, 87 L Ed 1407 (1943) (illustrating rule). We see no constitutional or other basis for suggesting, much less holding, that Congress nevertheless intended that state courts may not withhold similar relief upon the same terms.

## 2. Adequacy of State Administrative Remedy

Taxpayers argue next that it is inappropriate to require them to exhaust their administrative remedies pursuant to ORS 305.275(4) because the administrative remedies available from the Department would be inadequate as a matter of law for one or another of the following reasons: (1) the Department does not have jurisdiction to entertain an action brought under 42 USC § 1983; (2) the Department lacks authority to declare a taxing scheme unconstitutional, which Taxpayers' claims would require it to do; (3) the Department lacks authority to award Taxpayers the punitive damages they seek in connection with their 42 USC § 1983

claim; and (4) Defendants have demonstrated a predisposition to disallow Taxpayers' claims, making exhaustion a futile gesture. We address each of these assertions in turn.

### (a)   Department cannot entertain § 1983 actions

■     Taxpayers assert that requiring them to exhaust their administrative remedies with respect to their claim under 42 USC § 1983 is inappropriate because, they argue, such an effort would be futile as a matter of law. The Department cannot afford them the relief they seek under the federal statute; only a court can do that.[10]

This argument misses the point. It is true, as Defendants concede, that the Department cannot award Taxpayers damages under 42 USC § 1983. But the Department *can* (and may) give Taxpayers all the relief Taxpayers claim they are entitled to under an appropriate, constitutional reading of the Oregon tax system. And, if Taxpayers do obtain that relief, they have no further claim. *Oregon State Police Assn. v. State of Oregon,* 308 Or 531, 537-39, 783 P2d 7 (1989) *cert den* ___ US ___, 111 S Ct 44 (1990). Thus, it is appropriate to require Taxpayers to exhaust their administrative remedies, even if the Department cannot award relief under 42 USC § 1983.[11]

Moreover, this argument, like certain other of Taxpayers' arguments, proves too much. If, as always will be the case, state administrative agencies are unable to award damages and other forms of relief contemplated by § 1983, the

---

[10] As suggested by footnote 8, *ante,* Taxpayers' argument may prove too much. There is a real question in this case as to whether *the Oregon Tax Court itself* can provide Taxpayers the relief that they seek under 42 USC § 1983. The parties in this case appear to believe that the Tax Court, having the "same powers as a circuit court" under ORS 305.405, can entertain such claims. That is less clear to us. We have determined that we need not answer this question, however, because our disposition of this case makes it premature to address the issue. *See Sanok v. Grimes, supra* n 8, 294 Or at 698 n 22 (in determining whether particular claims fall within the jurisdiction of the Oregon Tax Court, resolution of the jurisdictional question does not require determining whether any particular set of allegations otherwise states an actionable claim).

[11] The burden attendant in pursuing the administrative remedy apparently is not, itself, a ground for separate relief, so long as the administrative process produces all that the taxpayer claimed to be entitled to at the outset. *See Rosewell v. LaSalle National Bank,* 450 US 503, 101 S Ct 1221, 67 L Ed 2d 464 (1981) (repeated improper assessment of property, necessity of repeated appeals, two-year delay in obtaining refund of taxes paid under protest, and lack of any interest paid on refunded amounts not enough to excuse federal district courts from compliance with Tax Injunction Act).

*McNary* decision is necessarily wrong. Why require exhaustion — particularly under the *McNary* majority's theory, which is that exhaustion is necessary under the court-made doctrine of noninterference with state taxation procedures — if an action under 42 USC § 1983 always will follow in any event? We hold that Taxpayers are not excused from exhausting their state administrative law remedies on the ground that the Department lacks authority to grant them all the relief they seek under 42 USC § 1983.

> *(b) Department cannot declare statutes unconstitutional*

■ Taxpayers argue that Oregon administrative bodies, including the Department, lack authority to declare that a particular statute or rule is unconstitutional and, therefore, Taxpayers are not required to exhaust their administrative remedies because the Department could not declare the disparity between ORS 237.201 and 316.680(1)(c) constitutionally impermissible.

Taxpayers are wrong in their premise. Although it is an authority to be exercised infrequently, and always with care, Oregon administrative agencies have the power to declare statutes and rules unconstitutional. *Cooper v. Eugene Sch. Dist. No. 4J,* 301 Or 358, 723 P2d 298 (1986); *see also Employment Div. v. Rogue Valley Youth for Christ,* 307 Or 490, 770 P2d 588 (1989) (recognizing same principle).

> *(c) Department lacks authority to award punitive damages*

■ Taxpayers argue that they need not exhaust their administrative remedies because they seek punitive damages, and those cannot be awarded by the Department. Again, Taxpayers have not yet suffered a harm that would require any relief under § 1983, and will not have suffered such harm unless their administrative remedies do not give them all they claim under their interpretation of the tax laws and the United States Constitution. Punitive damages are not yet relevant. *Oregon State Police Association v. State of Oregon, supra.*

*(d) Exhaustion not required where allegations show that exhaustion would be futile*

Taxpayers point out that they alleged in their first amended complaint that exhaustion of administrative remedies would be futile for several different reasons. Three of these reasons, *viz.*, that the Department cannot vindicate Taxpayers' § 1983 claims, cannot declare statutes unconstitutional, and cannot award punitive damages, are not valid (as we already have demonstrated). The balance have no more substance:

■ (1) Taxpayers allege that Defendants have "summarily" denied claims for refunds made by others similarly situated. But that is what exhaustion of remedies is for — to see if those denials were legally correct.

■ (2) Taxpayers allege that Defendants have even "gone so far" as to issue deficiency notices to some who have not paid their taxes. Again, the legal correctness of such actions is what the administrative process is designed to test.

■ (3) Taxpayers assert that "[D]efendants' counsel have repeatedly asserted that the [D]efendants have no legal obligation to pay refunds for any tax year prior to 1989." And they may not. The retroactivity of *Davis* (if it otherwise is controlling) doubtless will be an interesting issue. Certainly, however, the fact that this question is waiting in the wings does nothing to illustrate any futility to the administrative process.

(4) Finally, Taxpayers point to Defendants' assertion to the Oregon Tax Court (and repeated to this court, in Defendants' brief) that Defendants believe that the *Davis* case was wrongly decided. Perhaps Defendants simply are protecting their record for a possible petition for certiorari or appeal to the Supreme Court of the United States, but protecting the record is not the same thing as demonstrating the kind of implacable hostility toward Taxpayers that otherwise might cause this court to consider whether exhaustion of administrative remedies was required.

We hold that none of Taxpayers' allegations creates a basis for excusing Taxpayers from the required exhaustion of their administrative remedies. In so holding, we need not

consider whether the Defendants are correct in their alternative argument that Taxpayers may not be excused from exhaustion of administrative remedies on grounds of futility where, as in the present case, the exhaustion requirement in this case is created by statute, rather than as a court-made rule, and, therefore, cannot be modified by court-made doctrines.

### 3. Exhaustion of Administrative Remedies Is Excused

■ Finally, Taxpayers assert that they are excused from exhausting their administrative remedies because none of the objectives that are forwarded by the doctrine of exhaustion of administrative remedies would be served by applying the doctrine in this case, and Taxpayers therefore are "relieved of such a burden."

We disagree. If Taxpayers exhaust their administrative remedies and, in the process, obtain the relief under the Oregon personal income tax laws that they seek, the need for this § 1983 litigation vanishes. That is a sufficient reason to require exhaustion.[12]

## CONCLUSION

We hold that the Oregon Tax Court correctly interpreted ORS 305.275(4) to require Taxpayers in this case to exhaust their administrative remedies with respect to their claim for damages and other relief under 42 USC § 1983. Taxpayers have not, in their brief to this court, suggested that the Tax Court erred in applying the doctrine of exhaustion of administrative remedies to Taxpayers' other claims in their first amended complaint, and it does not appear to us that the Tax Court erred in that regard. It follows that the decision of the Tax Court should be affirmed.

The judgment of the Oregon Tax Court dismissing Taxpayers' complaint is affirmed.

---

[12] Again, it also may be true that, because the exhaustion requirement in this case was created by statute, lack of the usual justifications for requiring exhaustion would be irrelevant. Because we find Taxpayers' argument on this point not well taken as to the merits, we need not address this alternative basis for our holding.